LAURA U. WICKES

*v.*

THOMAS H. WICKES' EXECUTORS.

*Opinion filed February 21, 1906.*

1. DIVORCE—*divorce decree construed.* A divorce decree requiring the husband to convey certain premises to the wife in fee and to expend a sum not exceeding $100 for repairs, and to convey certain other premises to her for life and keep the latter in good tenantable condition, does not require the husband to keep the former premises in repair at his own expense after making the initial repairs, as specified in the decree.

2. SAME—*what does not render husband liable for repairs on house.* Where there is a dispute between divorced persons as to which is liable, under the decree, for repairs on a house conveyed in fee to the wife, and a stipulation is entered into that the making of the repairs shall be left to the agents in charge of the property, leaving the question of liability therefor to the courts, the fact that the husband subsequently requests the agents to make such repairs as are necessary, agreeing to advance the money and reimburse himself from the income, does not make him liable for the repairs so made.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

BLACK & BLACK, for plaintiff in error.

RUNNELLS & BURRY, for defendants in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On February 19, 1895, the circuit court of Cook county entered a decree of divorce in favor of Laura U. Wickes, plaintiff in error, upon a bill filed by her against her husband, the late Thomas H. Wickes, and afterwards, on February 25, 1895, said court entered a decree for alimony. By that decree Mr. Wickes was ordered to convey to Mrs.

Wickes the house and lot No. 3647 Grand boulevard, in Chicago, in fee simple. The decree also provided that he should pay her solicitor's fees and disbursements, and a further sum, not to exceed $100, to be expended in repairs on said premises on written bills therefor, and he was also required to pay a mortgage of $7000 on the property. He was also ordered to make a conveyance to her of an estate for her life in the house and lot No. 3645 Grand boulevard, with a reversion to him for his life if he survived her, and a remainder in fee simple to their children, to pay a mortgage of $7500 on that property, to pay taxes and other governmental charges thereon during her life, and to keep the premises in good tenantable condition and insured for not less than $7500. He was also required to give her paid-up insurance policies on his life to the amount of $11,000, and to keep up for her benefit other life insurance to the amount of $7000 and also $15,000 of accident insurance, to secure the payment of the mortgages. By the decree it was provided that he should guarantee the gross rental from the two houses to be $250 per month during the minority of Thomas H. Wickes, Jr., who attained his majority in 1897, and $200 afterward. It was provided that the diligence required of her in endeavoring to rent the houses should be the placing of the same for rent in the exclusive charge of some reliable real estate or renting agent satisfactory to Mr. Wickes, with full authority to such agent to rent the same, and $50 of the $250 was for the support and maintenance of said Thomas H. Wickes, Jr. Mr. Wickes complied with the decree, paid the mortgages, paid the taxes, repairs and insurance on the house and lot No. 3645, in which Mrs. Wickes had a life estate with a reversion to him and a remainder to their heirs, but controversies arose as to whether he was liable to pay for repairs on the premises No. 3647, which Mrs. Wickes owned in fee. That question was twice brought before the circuit court and is the question to be decided here. In 1897 repairs were needed on the house No. 3647, which

220—3

Mrs. Wickes owned in fee, to enable the agents to rent it. The solicitors for both parties sent a letter to the agents having charge of renting the premises, saying that a dispute had arisen as to who should bear the cost of repairs and the dispute would have to be settled by the court, but that in order not to lose the tenant the agents should make the necessary repairs, and when the court should decide which party should pay the cost the matter would be disposed of. The repairs were accordingly made, and the question, together with another matter in dispute, was brought before the court. The other controversy was about the occupation of the house. The decree provided that if Mrs. Wickes occupied as a residence either house, the amount of gross income guaranteed by Mr. Wickes should be reduced by the sum of $150 per month if she occupied No. 3647 and $100 per month if she occupied No. 3645, but the amount was not to be reduced if either house was vacant for want of a suitable tenant and she should occupy it while trying to rent the house. She claimed that she was occupying the house temporarily under that provision and the gross rental should not be reduced. The matter came on for hearing, and the court decided against Mr. Wickes as to the occupation of the house, and ordered that he should pay the amount by which the rental for the two houses fell below $200. On the question of repairs the court construed the decree according to its plain meaning, as follows: "And that under said decree repairs made to 3647 must be borne by complainant and paid for by her out of the gross income derived from said two houses." Again, in 1899 a controversy over the same question of repairs arose, and the solicitor for Mr. Wickes insisted that the repairs were to be borne by Mrs. Wickes and to be charged to the income of the property, but he requested that such repairs as the agents thought necessary should be made in order to rent the property, and agreed that Mr. Wickes would advance the money necessary for such repairs and look to the income of the propetry to re-imburse him for the

sum so advanced. Mrs. Wickes then filed her petition in the court asking for an order compelling Mr. Wickes to pay for the repairs. On that second hearing the court construed the decree as though gross rentals meant net rentals, and ordered Mr. Wickes to pay the money deducted from rentals for repairs and commissions thereon, and to keep the rentals equal to $200 per month and to pay Mrs. Wickes $125 for solicitor's fees on that petition. That order was entered on January 2, 1901, and Mr. Wickes appealed from it to the Appellate Court for the First District. The Appellate Court reversed the decree on November 21, 1901, and a writ of error has been sued out to review the judgment of the Appellate Court. Mr. Wickes died March 28, 1905, and the executors of his will were substituted as defendants in error.

We are of the opinion that the judgment of the Appellate Court was right. The decree of the circuit court did not require Mr. Wickes to assume any obligation to pay for repairs on the premises No. 3647, which he conveyed in fee simple to Mrs. Wickes. He was required to convey that property to her and to pay the mortgage, and there was a specific provision that he was to pay a further sum, not exceeding $100, to be expended in repairs on that property. The only further obligation as to that property was, that he should guarantee the gross rentals of the two houses to equal a certain sum. It was, of course, implied that necessary repairs should be made so that the property might be rented and yield income, but that duty rested upon Mrs. Wickes as owner of the property. It was provided as to the premises No. 3645 that he should pay all taxes and governmental charges, keep the premises in good tenantable condition and insured for not less than $7500, and if it had been the intention that he should have done any of those things with respect to the other property it certainly would have been so provided. Counsel do not point to any provision of the decree which required Mr. Wickes to pay for repairs on the property now in question which he had conveyed

to his wife in fee, but they say that he ought to pay for them, and especially because he requested that they should be made, while Mrs. Wickes thought that such an amount of repairs was not necessary. His request was only that such repairs should be made as were usual and proper in the conservative management of property for the purpose of renting it, and the question what repairs were necessary was left to the agents in charge of the property. On April 26, 1899, the solicitors for the parties entered into a stipulation reciting the disagreement and agreeing that the renting agents for the house be authorized to make the necessary repairs, but the stipulation was to be without prejudice as to any order of the court as to who should pay for them. Mr. Wickes did not assume any liability not imposed upon him by the decree, and that decree was properly construed by the circuit court when the question was before the court on the first petition.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*